

Gerald Noble, OSB# 104634
E-mail: invisionlawfirm@live.com
INVISION LAW FIRM
6830 NE Broadway, #17
Portland, OR 97213-5374
Tel: (503) 208 - 4260
Fax: (866) 998 – 1846

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DONALD DELONEY, an individual,<br><br>       Plaintiff,<br><br>vs.<br><br>TRI-COUNTY METROPOLITAN TRANSPORTATION DISTRICT OF OREGON, a public corporation; STEPHEN BANTA, an individual. AND MICHAEL FORD, an individual,<br><br>       Defendants. | Case No.   **CV '11   977   ST**<br><br>COMPLAINT<br><br>Violations of 42 U.S.C. §1981<br>Violations of 42 U.S.C. §1985(3)<br><br>DEMAND FOR JURY TRIAL |

### PRELIMINARY STATEMENT

1.    This is an action for damages, including punitive damages and attorney's

fees and costs, to redress defendant's violations of plaintiff's federal statutory rights.

### JURISDICTION AND VENUE

2.    Jurisdiction over this action is proper under 28 U.S.C. §§ 1331 and 1343.

3.    The claims which are the subject of this action arose within this judicial

district therefore venue in District of Oregon is proper.

///

PAGE 1 – COMPLAINT

## PARTIES

4.      Plaintiff Donald Deloney ("Mr. Deloney") is a 59 year old African American, male. At all material times herein, Mr. Deloney worked for defendant Tri-County Metropolitan Transportation District of Oregon ("TriMet") as a bus operator.

5.      Defendant TriMet is a domestic, public corporation duly organized, authorized, and existing under the laws of the State of Oregon to do business in Oregon. TriMet was, and is, engaged in the business of public transportation in the metropolitan Portland area.

6.      At all relevant and material times, defendant Michael Ford ("Mr. Ford") was the Transportation Operations Director for TriMet.

7.      At all relevant and material times, defendant Stephen Banta ("Mr. Banta") was the Operations Executive Director for TriMet.

## COMMON ALLEGATIONS

8.      Mr. Deloney was hired by TriMet as a bus operator on March 16, 1996.

9.      Sometime in November, 2003, Mr. Deloney complained to TriMet management about a racially offensive comment made by his training supervisor. During a training session, the supervisor stated to Mr. Deloney, "You wouldn't want someone to call you a nigger would you?"  TriMet did not act on this matter until June 14, 2004, and Mr. Deloney did not receive a formal response from TriMet regarding this incident until July 16, 2004.

10.     During the interim period (from November, 2003 to July, 2004) Mr. Deloney was still being supervised and trained by the employee who made the racially offensive statement.

PAGE 1 – COMPLAINT

11.    On October 4, 2004, Mr. Ford sent Mr. Deloney a letter apologizing for the length of time it took to address and resolve the issue and assured Mr. Deloney that the situation would be resolved but did not suggest how or when the issues would be addressed. Furthermore, Mr. Ford failed to address many of the concerns raised by Mr. Deloney including allegations of rampant and pervasive racism by TriMet supervisors towards African-American employees.

12.    Sometime in October, 2004, the same employee who made the racially offensive comment boarded a TriMet bus that Mr. Deloney was operating. The employee sat in the front seat and in close proximity to Mr. Deloney. Mr. Deloney had no knowledge that the supervisor would be boarding his bus and this made Mr. Deloney very anxious and uncomfortable.

13.    After getting an unsatisfactory response from TriMet regarding the racially offensive comment, Mr. Deloney filed a grievance with his union, Amalgamated Transit Union, Local 757 ("Local 757") regarding the comment as well as the incident where the TriMet employee boarded the bus Mr. Deloney was driving.

14.    On, August 30, 2005, Mr. Deloney was convicted for driving under the influence of intoxicants. The conviction occurred in the state of Washington. The Department of Motor Vehicles for the state of Washington entered a final judgment for the DUII conviction on February 2, 2006 and notified the DMV for the state of Oregon on that same date.

15.    Mr. Deloney's commercial driver's license ("CDL") and driving privileges in the state of Oregon were suspended on March 6, 2006.

16.    On March 7, 2006, TriMet placed Mr. Deloney on absence without leave

PAGE 1 – COMPLAINT

"AWOL" status because he did not have a valid CDL and valid driving privileges in the state of Oregon.

17.     On March 8, 2006, Mr. Deloney filed a request for a leave of absence ("LOA") to avoid AWOL status. TriMet denied the request for leave because Mr. Deloney did not use the proper form.

18.     On March 14, 2006, Mr. Deloney and Local 757 filed a grievance regarding TriMet's denial of the LOA request. However, TriMet terminated Mr. Deloney for being AWOL in excess of five working days on March 15, 2006, before hearing the grievance for the LAO.

19.     Although the exact date is not clear, Mr. Deloney and Local 757 filed a grievance regarding the termination sometime between March 20 and March 24, 2006.

20.     TriMet subsequently combined the grievance for the LOA denial with the termination grievance and heard both issues (Grievance #6544) on April 13, 2006. TriMet denied the termination grievance on timeliness grounds and denied the LOA on the grounds that it was abandoned.

21.     Mr. Deloney and Local 757 filed a filed step III grievance for grievance #6544 on May 11, 2006 which TriMet subsequently denied. On May, 26, 2006, Mr. Deloney and Local 757 filed a request for arbitration.

22.     Almost three years later, TriMet management and a Local 757 representative met on January 29, 2009, to discuss grievance #6544 wherein Mr. Banta agreed to summarize the events leading to Mr. Deloney's termination and sought to close out the grievance (and prevent the grievance from goring to arbitration). Mr. Banta sent the aforementioned summary to Local 757 in a letter dated February 11, 2009.

PAGE 1 – COMPLAINT

)

23.     On October 14, 2009, Local 757 sent a letter to Mr. Deloney asking him to contact their office if he wished to proceed to arbitration.

24.     On October 22, 2009, Local 757 sent Mr. Deloney a letter confirming Mr. Deloney's request for arbitration. Local 757 then scheduled a meeting with Mr. Deloney for November 13, 2009 to make a formal request for arbitration to the executive board.

25.     Local 757 submitted Mr. Deloney's request for arbitration to its members on December 14, 2009. The members voted not to seek arbitration on Mr. Deloney's behalf.

26.     On February 5, 2010, Local 757 sent Mr. Deloney a letter stating that they would be notifying TriMet that they were closing Mr. Deloney's file (grievance #6544) and that he would be asking TriMet to do the same.

27.     Mr. Deloney's termination on March 7, 2006, occurred only several months prior to the ten years of service required to become vested for employer pension and other benefits.

28.     Mr. Deloney has personal knowledge of several other African-American TriMet employees who were terminated prior to becoming vested for TriMet's pension and other benefits.

29.     Mr. Deloney has personal knowledge of several whites who were allowed to take LOA after being convicted for DUII and were not terminated or placed on AWOL status for getting a DUII.

## FIRST CLAIM FOR RELIEF

### Violations of 42 U.S.C. §1981(b) – Racial Discrimination & Harassment
### (Against Defendant TriMet)

PAGE 1 – COMPLAINT

INVISION LAW FIRM
6830 NE Broadway, #17
Portland, OR 97213
(503) 208 – 4260
Fax (866) 998 – 1846

30.   Mr. Deloney realleges and incorporates paragraphs 1 through 29.

31.   TriMet unlawfully discriminated in the benefits, terms, privileges, and conditions of Mr. Deloney's employment by arbitrarily disciplining him, arbitrarily denying his LOA request, and arbitrarily terminating him as described above.

32.   TriMet's aforementioned conduct was intentional.

33.   Mr. Deloney race was the sole reason and or motivating factor in TriMet's conduct toward, and decisions made concerning Mr. Deloney.

34.   As a direct and proximate result of TriMet's conduct, Mr. Deloney suffered and continues to suffer loss of employment, loss of employment benefits, and loss of income from the date of his termination and is entitled to an award of compensatory damages in an amount to be determined at trial. Mr. Deloney is also entitled to front pay for future loss of wages and benefits in lieu of reinstatement in an amount to be determined at trial.

35.   As a direct and proximate result of TriMet's conduct, Mr. Deloney suffered and will continue to suffer loss of enjoyment of life, and is entitled to an award of general damages in the amount of $100,000.

36.   Mr. Deloney is entitled to an award of punitive damages in the amount of $250,000 because TriMet's conduct was outrageous in the extreme and in deliberate disregard of Mr. Deloney's federally protected rights.

37.   Pursuant to 42 U.S.C. §1988, Mr. Deloney is entitled to an award of attorneys fees, expert fees and costs incurred herein.

## SECOND CLAIM FOR RELIEF

**Violations of 42 U.S.C. §1985(3) – Conspiracy to Interfere With Civil Rights**

PAGE 1 – COMPLAINT

(Against Defendants Ford and Banta)

38.    Mr. Banta and Mr. Ford sanctioned the arbitrary denial of Mr. Deloney's

LOA request and subsequent termination. To that end both defendants either directly or

indirectly conspired to interfere with the benefits, terms, conditions, and privileges of Mr.

Deloney's employment

39.    Mr. Banta and Mr. Ford's aforementioned conduct was intentional.

40.    Mr. Deloney race was the sole reason and or motivating factor in

defendants Ford and Banta's conduct toward, and decisions made concerning Mr.

Deloney.

41.    As a direct and proximate result of Mr. Banta and Mr. Ford's conduct, Mr.

Deloney suffered and continues to suffer loss of employment, loss of employment

benefits, and loss of income from the date of his termination and is entitled to an award

of compensatory damages in an amount to be determined at trial. Mr. Deloney is also

entitled to front pay for future loss of wages and benefits in lieu of reinstatement in an

amount to be determined at trial.

42.    As a direct and proximate result of TriMet's conduct, Mr. Deloney suffered

and will continue to suffer loss of enjoyment of life, and is entitled to an award of general

damages in the amount of $100,000.

43.    Mr. Deloney is entitled to an award of punitive damages in the amount of

$250,000 because Mr. Banta and Mr. Ford's conduct was outrageous in the extreme

and in deliberate disregard of Mr. Deloney's federally protected rights.

44.    Pursuant to 42 U.S.C. §1988, Mr. Deloney is entitled to an award of

attorneys fees, expert fees and costs incurred herein.

PAGE 1 – COMPLAINT

## DEMAND FOR A JURY TRIAL

44.     Plaintiff demands a jury trial.

## PRAYER

WHEREFORE, PLAINTIFF prays for judgment against defendant TRIMET as

follows:

1.     For an award of general damages in the sum of $100,000;

2.     For an award of special damages for lost pay and benefits, including

prejudgment interest, from the date of termination to the date of trial;

3.     For front pay in lieu of reinstatement an amount to be determined at trial;

4.     For punitive damages in the sum of $250,000;

5.     For plaintiff's reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

6.     For plaintiff's and costs and disbursement incurred herein.


WHEREFORE, PLAINTIFF prays for judgment against defendant s FORD and

BANTA as follows:

1.     For an award of general damages in the sum of $100,000.00.

2.     For an award of special damages for lost pay and benefits, including

prejudgment interest, from the date of termination to the date of trial;

3.     For front pay in lieu of reinstatement an amount to be determined at trial;

4.     For punitive damages in the sum of $250,000.00;

5.     For plaintiff's reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

6.     For plaintiff's and costs and disbursement incurred herein.

PAGE 1 – COMPLAINT

**Dated:** AUGUST 12, 2011                    INVISION LAW FIRM


_____
GERALD NOBLE, OSB# 104634
Telephone: (503) 208 – 4260
Fax: (866) 998 - 1846
Email: invisionlawfirm@live.com
**Attorney for Plaintiff**

PAGE 1 – COMPLAINT

## CERIFICATE OF SERVICE

I hereby certify that on August 12, 2011, I caused to be served a copy of the foregoing

COMPLAINT on the following person(s) in the manner indicated below at the following

addresses:

Shelly Devine

TriMet Attorney

4012 SE 17th Ave

Portland, OR, 97202-4404

**Fax: 503-962-3095**

☐ by **Email**

☐ by **Fax**

☒ by **Hand Delivery**

☐ by **First Class Mail**

☐ by **CM/ECF**

**Dated**: AUGUST 12, 2011                    INVISION LAW FIRM

By: _____

GERALD NOBLE, OSB# 104634
iNvision Law Firm
Telephone: (503) 208 – 4260
Email: invisionlawfirm@live.com

PAGE 1 – CERTIFICATE OF SERVICE

INVISION LAW FIRM
6830 NE Broadway, #17
Portland, OR 97213
(503) 208 – 4260
Fax (866) 998 – 1846