UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DONALD DELONEY, an individual,

        Plaintiff,

   v.

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF
OREGON, a public corporation; STEPHEN
BANTA, an individual; and MICHAEL
FORD, an individual,

        Defendants.

Case No. 3:11-cv-00977 -ST

FINDINGS AND
RECOMMENDATIONS

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Donald Deloney ("Deloney"), filed this action on August 12, 2011, alleging a claim for violation of 42 USC § 1981 against his former employer, Tri-Metropolitan Transportation District of Oregon ("Tri-Met"), and for conspiracy to violate his civil rights in violation of 42 USC § 1985(3) against two Tri-Met employees, Michael Ford ("Ford"), the Transportation Operations Director, and Stephen Banta ("Banta"), the Operations Executive

1 - FINDINGS AND RECOMMENDATIONS

Director.[1]  Deloney voluntarily dismissed this action in October 2011 (dockets #15 & #16), but reinstated it in May 2012 over Tri-Met's objection (docket #22).

Tri-Met has filed a Motion to Dismiss the § 1981 claim as barred by the applicable statute of limitations (docket #23).  During oral argument on this motion, Deloney submitted a Motion to Supplement Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (docket #33) which this court construed as a motion to amend (docket #35).  In that motion to amend, Deloney contends that he should be allowed to plead equitable tolling to avoid the statute of limitations bar.  For the reasons that follow, Deloney should not be permitted to amend and the § 1981 claim against Tri-Met should be dismissed with prejudice.

## FACTS

In addition to the allegations in in the Complaint, some additional facts are contained in the provisions of the collective bargaining agreement ("CBA") between Tri-Met and the Amalgamated Transit Union, Division 757 ("Union" or "ATU 757"), which is referenced in the Complaint.  Complaint, ¶ 13; *see* Noble Decl., Exs. 1-3; *United States v. Ritchie*, 342 F2d 903, 908 (9th Cir 2003) ("court may consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment") (citations omitted).

Apart from that uncontested document, this case arises in a somewhat unusual procedural posture as it involves a motion to dismiss, coupled with a motion to amend to allege equitable tolling supported by factual information from Deloney not yet alleged in the pleadings. "Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review is limited to the

---

[1] Neither Ford nor Banta have filed an appearance, presumably because they have not yet been served.

2 - FINDINGS AND RECOMMENDATIONS

complaint) if equitable tolling is at issue." *Huynh v. Chase Manhattan Bank*, 465 F3d 992, 1003-04 (9th Cir 2006) (citation omitted). Moreover, "federal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings; this rule applies even where the tolling argument is raised in opposition to summary judgment." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F3d 989, 991 (9th Cir 2006) (citations omitted). Although the Complaint does not yet allege equitable tolling, Deloney has submitted his sworn affidavit attesting to various (and repeated) statements made to him by Union officials. Rather than grant Deloney's motion to amend to add that information to his Complaint – which would no doubt lead immediately to a second motion to dismiss – this court will treat all the information in Deloney's affidavit as true for purposes of considering Tri-Met's motion to dismiss and opposition to any amendment.

Tri-Met hired Deloney, an African-American, as a bus driver on March 16, 1996. Complaint, ¶¶ 4, 8. In November 2003, Deloney complained to Tri-Met management about a racially offensive comment made by his training supervisor. *Id*, ¶ 9. Tri-Met did not respond to Deloney's complaint for an entire year and did not address other concerns raised by Deloney about rampant racism by Tri-Met supervisors towards African-American employees. *Id*, ¶¶ 9, 11. Sometime in October 2004, the same training supervisor who made the racially offensive comment boarded Deloney's bus and sat in close proximity to him, making Deloney very anxious and uncomfortable. *Id*, ¶ 12. After receiving an unsatisfactory response to his complaint about the offensive comment, Deloney filed a grievance with the Union concerning both the comment and the later incident involving the training supervisor. *Id*, ¶ 13.

On August 30, 2005, Deloney was convicted of driving under the influence of intoxicants ("DUII") in the State of Washington. *Id*, ¶ 14. A final judgment of conviction was entered on

3 - FINDINGS AND RECOMMENDATIONS

February 2, 2006, and the State of Oregon was notified the same date. *Id*. On March 6, 2006, the State of Oregon suspended Deloney's commercial driver's license ("CDL") and driving privileges. *Id*, ¶ 15. On March 7, 2006, Tri-Met placed Deloney on absence without leave ("AWOL") status because he did not have a valid CDL and driving privileges in the State of Oregon. *Id*, ¶ 16.

On March 8, 2006, Deloney filed a request for a leave of absence ("LOA") to avoid AWOL status. *Id*, ¶ 17. Tri-Met denied that request because Deloney did not use the proper form. *Id*. On March 14, 2006, Deloney and the Union filed a grievance regarding the denial of the LOA request. *Id*, ¶ 18. However, Tri-Met fired Deloney on March 15, 2006, before a hearing on the grievance and only a short time before Deloney would have been vested in Tri-Met's employee pension and other benefits. *Id*, ¶¶ 18, 27.

While Deloney was on AWOL status, he learned that at least two white bus operators had DUII convictions but were not terminated. Deloney Aff., ¶ 3. As a result, it never occurred to Deloney that he would not get his job back. *Id*.

Deloney and the Union filed a grievance of the termination sometime between March 20 and March 24, 2006. Complaint, ¶ 19. Deloney's two pending grievances were combined on April 13, 2006. *Id*, ¶ 20. Tri-Met denied the termination grievance due to untimeliness and denied the LOA grievance on the ground that it was abandoned. *Id*. In May 2006, Deloney and the Union filed a Step III grievance which was denied. *Id*, ¶ 21. They then filed a request for arbitration. *Id*.

For reasons that are not explained in the pleadings, nearly three years passed without further action on Deloney's request for arbitration. During this time period, Deloney contends that Union officials, including the Union's Vice President, Sam Schwarz, repeatedly assured him

4 - FINDINGS AND RECOMMENDATIONS

that he would be reinstated to his job. Deloney Aff., ¶ 4. Schwarz and the Union's shop steward also told Deloney on several occasions that he could not get an outside attorney until the grievance proceedings concluded. *Id*, ¶ 5.

On January 29, 2009, Tri-Met management and a Union representative met to discuss Deloney's pending grievance. Complaint, ¶ 22. Banta, Tri-Met's Operations Executive Director, sent a letter to Deloney on February 11, 2009, which Deloney contends summarized the events leading to his termination in a way designed to close out the grievance and prevent it from going to arbitration. *Id*.

Eight months later, on October 14, 2009, the Union sent Deloney a letter asking him to contact its office if he wished to proceed to arbitration. *Id*, ¶ 23. On December 14, 2009, the Union submitted Deloney's request for arbitration to its members who voted not to seek arbitration on Deloney's behalf. *Id*, ¶ 25. On February 5, 2010, the Union sent Deloney a letter closing Deloney's grievance and stating that it would ask Tri-Met to do the same. *Id*, ¶ 26. When Deloney received that letter on February 9, 2010, he "realized that ATU 757 was not going to get [his] job back and that [he] was being abandoned by ATU 757." Deloney Aff., ¶ 6.

The CBA between the Union and Tri-Met requires that "all grievances relating to any alleged violation of any provision of [the CBA] or concerning any suspension, discharge, or other discipline of any employee covered by [the CBA]" be processed through the CBA's grievance procedures. Noble Decl., Ex. 2 (CBA, p. 5). The CBA's grievance procedures involve a four-step process: (1) an attempt at informal resolution including a pre-filing conference (Step I); (2) the filing of a formal grievance with a written response by the appropriate department director (Step II); (3) a reference to the Grievance Committee which must decide whether to sustain or reject the grievance (Step III); and, finally, (4) a submission of

5 - FINDINGS AND RECOMMENDATIONS

the grievance to the appropriate agencies, created by law to mediate, conciliate, or adjust labor disputes (Step IV). *Id*, pp. 5-9.

## FINDINGS

### I. Statute of Limitations

Deloney arguably alleges both retaliation and disparate treatment claims based on race under § 1981 against Tri-Met. Complaint, ¶¶ 9, 13 (alleging that he complained about a racially offensive comment and filed a grievance concerning that comment prior to being placed on AWOL status over the DUII conviction) and 29 (alleging that white employees were allowed to take a LOA after a DUII conviction and avoid termination for being AWOL). Employment discrimination claims based on race arise under the 1991 amendment to § 1981 and are subject to the four-year statute of limitations under 28 USC § 1658. *Jones v. R.R. Donnelley & Sons*, 541 US 369, 382-83 (2004). Because retaliation claims arise from the same 1991 amendment, they are subject to the same four-year statute of limitations. *Johnson v. Lucent Techs, Inc.*, 653 F3d 1000, 1007-08 (9th Cir 2011). Each discrete retaliatory act starts the clock on the statute of limitations with respect to that act. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 US 101, 113 (2002).

If the running of the statute of limitations is apparent on the fact of the complaint, a court may dismiss a claim. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F3d 1034, 1045 (9th Cir 2011) (citation omitted). However, the court "may do so 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Id*, quoting *Jablon v. Dean Witter & Co*., 614 F2d 677, 682 (9th Cir 1980). Leave to amend "should be given freely," but "a district court may dismiss without leave where a

6 - FINDINGS AND RECOMMENDATIONS

plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Id* at 1041 (citation omitted).

## II.  Exhaustion of the CBA Grievance Proceedings

Deloney filed this action nearly five and a half years after he was terminated, but only six months after he received the Union's notice that it was closing the proceedings on his consolidated grievances. Tri-Met contends that Deloney's § 1981 claim is barred by the statute of limitations because it was filed more than four years after his termination. In response, Deloney argues that he timely filed his § 1981 claim because he was required to first exhaust the grievance and arbitration provisions of the CBA.

Deloney relies on two Oregon cases, arguing that they require resort to the remedies available in an applicable CBA before seeking judicial remedies under § 1981. However, those two cases stand only for the general proposition that, *where required under the terms of a CBA or a statute*, available CBA procedures must first be utilized to resolve claims.

In *Gilstrap v. Mitchell Bros. Truck Lines*, 270 Or 599, 529 P2d 370 (1974), *cert denied*, 421 US 1011 (1975), truck owner operators asserted breach of lease claims which clearly depended upon interpretation of provisions in the CBA regarding allocation of expenses. They asserted "rights based on the [truck] lease, the collective bargaining agreement, and oral promises allegedly made [to them by the trucking company]." *Id* at 604, 529 P2d at 373. Noting that "in the ordinary situation an employee who is subject to a [CBA] which contains mandatory grievance procedures must first look to those procedures as the vehicle for redress," the court ultimately excused compliance with those grievance procedures due to futility and breach of the duty of fair representation. *Id* at 606, 529 P2d at 374.

7 - FINDINGS AND RECOMMENDATIONS

In *Shockey v. City of Portland*, 313 Or 414, 837 P2d 505 (1992), *cert denied*, 507 US 1017 (1993), the plaintiff brought claims for wrongful discharge, civil rights violations, and intentional interference with economic relations.  The court cited *Gilstrap* to support the general notion that state policy requires utilization of "any collective bargaining act procedures as the vehicle for redress of disputes before resorting to court action."  *Id* at 421, 837 P2d at 508.  Nevertheless, the court found that it had jurisdiction over the wrongful discharge claim because the plaintiff had effectively exhausted his CBA remedies by appearing before the Employment Relations Board.

Unlike those cases, Deloney alleges a purely statutory discrimination claim, rather than a common law claim dependent upon proving a violation of the terms of the CBA.  The Supreme Court has made clear that a § 1981 claim is an independent claim which is not subject to the requirements of closely related statutes, such as Title VII.  "[T]he remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent."  *Johnson v. Ry. Express Agency, Inc.*, 421 US 454, 461 (1975).  Therefore, it held that the statute of limitations for a § 1981 claim is not tolled by filing EEOC charges under Title VII based on the same facts.  *Id* at 465-66.

On the other hand, the parties to a CBA may agree that otherwise independent statutory claims must be first be exhausted through the CBA's grievance and arbitration provisions.  In *14 Penn Plaza LLC v. Pyett*, 556 US 247 (2009), the CBA expressly required statutory claims alleging employment discrimination to be processed through its grievance and arbitration procedures "as the sole and exclusive remedy for violations," including a violation of the Age Discrimination in Employment Act.  *Id* at 251-52.  The Supreme Court upheld this waiver of a judicial remedy because the CBA's language "clearly and unmistakably" required union

8 - FINDINGS AND RECOMMENDATIONS

members to arbitrate ADEA claims and the ADEA did not expressly prohibit arbitration. *Id* at 248.

Unlike the CBA language in *14 Penn Plaza*, the CBA at issue here does not include a provision expressly making its grievance procedures the sole and exclusive remedy for the violation of any employment discrimination statute. Nor does the CBA mandate resort to its grievance procedures for such a claim. The CBA does require that "all grievances relating to any alleged violation of any provision of [the CBA] or concerning any suspension, discharge, or other discipline of any employee covered by [the CBA]" must be processed through the CBA's grievance procedures. Nobel Decl., Ex. 2 (CBA, p. 5). However, this general provision does not cite any particular discrimination statute, does not mention "statutory" (as opposed to CBA) violations, and discusses only the processing of "grievances," as opposed to the pursuit of "claims." In short, this very general language does not meet the requirement "that an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated' in the collective-bargaining agreement." *14 Penn Plaza*, 556 US at 258-59, quoting *Wright v. Universal Mar. Serv. Corp.*, 525 US 70, 80 (1998) (requiring a "clear and unmistakable" waiver).

Deloney's § 1981 claim is an independent parallel claim which is not dependent on any provision of the CBA. Although the § 1981 claim is based on the same conduct as his grievances under the CBA, the CBA neither requires that claim (or any statutory antidiscrimination claim for that matter) to be first presented through its grievance and arbitration procedures or to be remedied exclusively by those procedures. This court rejects Deloney's suggestion that he was required by state policy, the terms of the applicable CBA, or the holding in *14 Penn Plaza* to await the outcome of the grievance proceeding before pursuing his § 1981 claim in court. Accordingly, Deloney was neither required to exhaust his § 1981

9 - FINDINGS AND RECOMMENDATIONS

claim through the CBA's grievance and arbitration provisions nor required to await the conclusion of the grievance proceedings before filing his § 1981 claim in court.

### III. Equitable Modification of the Limitations Period

The Complaint alleges no basis for tolling the statute of limitations. However, in his affidavit, Deloney states that he was repeatedly told by Union officers that he would be reinstated to his job and that he was not permitted to retain an outside attorney until the grievance proceedings concluded. Based on those facts, Deloney seeks to amend his Complaint to allege equitable tolling of the statute of limitations through the date he was notified of the conclusion of the grievance procedures.

#### A. Legal Standard

Federal law determines when a civil rights claim accrues. *Elliott v. City of Union City*, 25 F3d 800, 801-02 (9th Cir 1994); *see also Lukovsky v. City and County of San Francisco*, 535 F3d 1044, 1048 (9th Cir 2008), *cert denied sub nom.*, 129 S Ct 1997 (2009) (applying this rule even when the limitations period is borrowed from state law because the federal statute does not contain its own limitations period). "Accrual is the date on which the statute of limitations begins to run; under federal law, a claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Lukovsky*, 535 F3d at 1048 (citations omitted); *see also TwoRivers v. Lewis*, 174 F3d 987, 991-92 (9th Cir 1999).

The Ninth Circuit recognizes two forms of "equitable modification," namely:

> equitable tolling and equitable estoppel. Equitable tolling requires that [the plaintiff] was excusably ignorant of the limitations period. . . . Equitable estoppel focuses on the defendant's actions. There must be evidence of improper purpose by the defendant, or of the defendant's actual or constructive knowledge that its conduct was deceptive.

*Stallcop v. Kaiser Found. Hosps.*, 820 F2d 1044, 1050 (9th Cir), *cert denied*, 484 US 986 (1987).

Equitable tolling turns on "whether there was excusable delay by the plaintiff: 'if a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.'" *Johnson v. Henderson*, 314 F3d 409, 414 (9th Cir 2002), quoting *Santa Maria v. Pac. Bell*, 202 F3d 1170, 1178 (9th Cir 2000). "Equitable estoppel, on the other hand, focuses primarily on action taken by the *defendant* to prevent plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'" *Lukovsky*, 535 F3d at 1051 (citations omitted, emphasis in original).

Equitable tolling applies "'in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim.'" *Cervantes*, 656 F3d at 1045, quoting *Socop-Gonzalez v. INS*, 272 F3d 1176, 1193 (9th Cir 2001). The plaintiff must establish both that he was diligently pursuing his rights and that some "extraordinary circumstance" stood in his way to prevent timely filing. *Lakey v. Hickman*, 633 F3d 782 (9th Cir), *cert denied*, 131 S Ct 3039 (2011) (citations omitted). Mere oversight or miscalculation" are not enough – instead, "[t]o apply the doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances 'stood in his way" suggests that an external force must cause the untimeliness . . . ." *Waldron-Ramsey v. Pacholke*, 556 F3d 1008, 1011 (9th Cir 2009) (citation omitted).

As explained by the Ninth Circuit, "'the threshold necessary to trigger equitable tolling . . . is very high, lest the exceptions swallow the rule.'" *Id*, quoting *Miranda v. Castro*, 292 F3d 1063, 1066 (9th Cir 2002) (additional internal citations omitted). Accordingly, the "doctrine 'is not available to avoid the consequences of one's own negligence.'" *Hensley v. United States*, 531 F3d 1052, 1058 (9th Cir 2008), *cert denied*, 129 S Ct 2432 (2009), quoting *Lehman v. United*

*States*, 154 F3d 1010, 1016 (9th Cir 1998), *cert denied*, 526 US 1040 (1999). It also "does not apply when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights." *Id* (internal quote marks and citations omitted). The doctrine extends the running of the statute of limitations only until "a reasonable person would believe he *may* have a cause of action." *Thelan v. Marc's Big Boy Corp.*, 64 F3d 264, 268 (7th Cir 1995) (emphasis in original). It does not postpone the running of the statute until the plaintiff is "'*certain* his rights have been violated.'" *Id* (emphasis in original), quoting *Cada v. Baxter Healthcare Corp.*, 920 F2d 446, 451 (7th Cir 1990), *cert denied*, 501 US 1261 (1991).

### B. Equitable Tolling

Deloney's delay in filing this case is squarely up against the formidable bar of Supreme Court authority which holds that the statute of limitations on a parallel, but independent, statutory claim to a grievance filed under a CBA is not tolled during the pendency of the CBA's grievance procedures. In *Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.*, 429 US 229, 236 (1976), the Court rejected the plaintiff's argument that the statutory period for filing a claim with the EEOC under Title VII was tolled during the pendency of grievance or arbitration procedures, finding them "virtually foreclosed" by its earlier decisions in *Alexander v. Gardner-Denver Co.*, 415 US 36 (1974) (allowing pursuit of a Title VII claim despite arbitration of grievance under nondiscrimination clause of CBA) and *Ry. Express Agency*, *supra* (finding that timely filing of Title VII claim with the EEOC did not toll the statute of limitations on § 1981 claim based on same facts). The Supreme Court "has made it clear that it is reluctant to invoke tolling where a plaintiff is tardy in pursuing a parallel avenue of relief." *Harris v. Alumax Mill Prods, Inc.*, 897 F2d 400, 404 (9th Cir), *cert denied*, 498 US 835 (1990), citing *Int'l Union of Elec. Workers*, 429 US at 236-40.

12 - FINDINGS AND RECOMMENDATIONS

In order to equitably toll the statute of limitations, it is not enough for Deloney to assert that he relied on advice from Union officials. By the time he was terminated in mid-March 2006, he had already learned that similarly situated white bus operators had not been terminated. He could have filed a § 1981 claim at any time after his termination. Instead, he was lulled into complacency by reassurances that he would be reinstated and believed the statements by Union officials that he could not retain outside counsel until the conclusion of proceedings on his grievance. Nevertheless, Deloney knew no later than February 9, 2010, that the Union had "abandoned" him and that he would need to hire an attorney to represent him regarding his termination by Tri-Met. At that time, he still had a little over a month to file a § 1981 claim within the four-year window after his March 2006 termination. He did not do so, but instead waited another six months before filing suit.

This court is very sympathetic to Deloney who apparently was led astray by his Union. Nonetheless, in light of Deloney's own knowledge of the facts supporting his claim of race discrimination, the Union's inexplicable conduct is not sufficient to equitably toll the statute of limitations.

### C. Equitable Estoppel

Given its focus on the actions of other individuals, Deloney's argument is more accurately characterized as invoking the doctrine of equitable estoppel. "The doctrine of equitable estoppel, often referred to as fraudulent concealment, is based on the principle that a party 'should not be allowed to benefit from its own wrongdoing.'" *Estate of Amaro v. City of Oakland*, 653 F3d 808, 813 (9th Cir 2011), quoting *Collins v. Gee West Seattle LLC*, 631 F3d 1001, 1004 (9th Cir 2011). It requires the pleading and proof of four elements: "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to

a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance." *Id*, citing *Bolt v. United States*, 944 F2d 603, 609 (9th Cir 1991).

Unfortunately, this doctrine imposes two insurmountable obstacles to Deloney. First, the Union – not the party to be estopped, namely Tri-Met – misled him as to his need to first exhaust his grievance and his right to retain counsel. Since the Union could not in any way be characterized as acting on behalf of Tri-Met, its actions cannot fairly be attributed to Tri-Met.

Second, Deloney cannot establish the third element, namely ignorance of the true facts. Ignorance requires proof "'both that the defendant used fraudulent means to keep the plaintiff unaware of his cause of action, and also that the plaintiff was, in fact, ignorant of the existence of his cause of action.' If a defendant proves that the plaintiff had actual or constructive knowledge of the facts giving rise to the claim, the doctrine of fraudulent concealment does not apply." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F3d 1055, 1060 (9th Cir 2012), quoting *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F2d 1515, 1521 (9th Cir 1983), *cert denied*, 465 US 1081 (1984). The focus "is not whether the plaintiff *knew* she had a cause of action . . . but whether the defendant's fraudulent concealment or misrepresentation deprived the plaintiff of a full understanding of the true facts, and thus, dissuaded the plaintiff from filing the claim at issue within the limitations period." *Estate of Amaro*, 653 F3d at 813 (emphasis in original).

In *Estate of Amaro*, the Ninth Circuit explained that "a plaintiff can know, or suspect, that she has a cause of action and still be 'ignorant of the true facts' of the case." 653 F3d at 813. The plaintiff, whose son died as a result of injuries sustained in a beating by police, knew of the possible existence of a claim. Within the limitations period, she met with five attorneys, but had found no eyewitnesses, was denied access to critical police and internal affairs reports, and was told by the investigating officer that her son had been found dead in the street as a result of gang

14 - FINDINGS AND RECOMMENDATIONS

and drug activity. *Id* at 812. In light of the "affirmative misrepresentations and stonewalling by the police," the court concluded that equitable estoppel could be applied to extend the statute of limitations on her claim. *Id* at 814-15.

The difficulty here is that Deloney's own affidavit establishes that he had a full understanding of all of the facts giving rise to his § 1981 claim. He knew as early as March 2006 that similarly situated white bus operators (with DUII convictions) had not been terminated. Tri-Met did nothing to conceal those facts. Deloney may have reasonably relied on the Union's misrepresentations in failing to seek the assistance of outside counsel and file suit sooner, but he knew at the outset that he was being discriminated against based on his race. Moreover, to the degree the misstatements or misrepresentations by Union officials delayed Deloney in filing suit, those misstatements were no longer a factor as of February 9, 2010, when the Union notified Deloney that the proceedings on his grievances were closed. Accordingly, the doctrine of fraudulent concealment (equitable estoppel) is not applicable.

## RECOMMENDATIONS

For the reasons stated above, Deloney's Motion to Amend (part of docket #35) should be DENIED, Tri-Met's Motion to Dismiss (docket #23) should be GRANTED, and the claim against Tri-Met (First Claim for Relief) should be DISMISSED WITH PREJUDICE.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due Monday, October 15, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED September 28, 2012.

>s/ Janice M. Stewart
> Janice M. Stewart
> United States Magistrate Judge